FOR PUBLICATION
UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
NATALIE J. CHARNEY,                :   The Hon. Joseph H. Rodriguez

       Plaintiff,       :   Civil Action No. 08-4241

   v.                               :   **OPINION**

                               :
CITY OF WILDWOOD,
       Defendant.       :
_____

*Attorney for Plaintiff:*
James J. Pettit
Law Offices of Gene Locks, PLLC
457 Haddonfield Road
Suite 500
Cherry Hill, NJ 08002

*Attorney for Defendants:*
Donald A. Powell
Powell, Birchmeier & Powell, ESQS.
1891 State Highway 50
Po Box 582
Tuckahoe, NJ 08250

     **RODRIGUEZ**, Senior District Judge:

     Plaintiff, Natalie J. Charney ("Charney") brought this action against the City of Wildwood ("Wildwood") for injuries allegedly sustained when she tripped and fell on the Wildwood boardwalk in August 2006. Presently before the Court is a motion for summary judgment filed by Wildwood pursuant to Fed. R. Civ. P. 56. The Court has considered the written submissions of the parties and heard oral argument on the motion on July 21, 2010. Summary judgment will be granted because Charney failed to establish that the hole in the boardwalk plank constituted a dangerous condition, or that any action Wildwood took to protect against the hole or the failure to take such action

was palpably unreasonable.  Accordingly, Defendant's motion [Dkt. Entry No. 29] is granted.

## I. BACKGROUND

At approximately 8:45 p.m. on August 25, 2006, Natalie Charney,[1] on vacation with her family, was walking on a poorly lit section of the Wildwood boardwalk near the Douglass Pavilion.[2]  (Charney Dep. at 19:3-25, 29:1-13, 31:17-22.)  Charney was walking with her daughter, son-in-law, and grandchildren, when she tripped in a hole in the boardwalk.  The hole that Charney claims caused her fall was roughly shaped like a right triangle measuring approximately three and three-eighths inches long and one and one-half inch deep.  And at its largest point, the hole measured one and one-quarter inch wide.

Charney alleges that as she fell she extended her hand out to brace herself and "smashed" her finger, chest, and knee against the boardwalk.  (Charney Dep. at 31:5-12.)  Police arrived a few minutes after Charney's fall and radioed for an ambulance.  The ambulance took her to Burdette Tomlin Memorial Hospital in Cape May where she was diagnosed with a fractured patella, fractured rib, and fractured finger.  (Charney Dep. at 35:4-16, 44:14-25, 45:1-10.)  The injuries resulted in a "left partial patellectomy with quadriceps tendon repair," and required the removal of a cyst from her fractured finger.  Both procedures caused permanent scarring.  (Am. Compl. at ¶ 15; Charney Dep. at 68:11-25, 69:1-25.)  Charney has ongoing pain and discomfort as a result of her injuries.

---

[1] Charney, a little person, stands four feet one inches tall and wears a size one and one-half shoe. (Pl.'s Supplemental Stmt. of Material Facts at ¶¶ 13-14.)

[2] The facts provided are derived from evidence submitted by the parties, viewed in a light most favorable to Plaintiff.  Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 666 A.2d 146, 156 (1995).

2

(Charney Dep. at 70:1-18.)

Charney was wearing Reebok sneakers on the night she fell. (Charney Dep. at 22:3-4.) Plaintiff's expert, Ronald J. Cohen,[3] observed that the tip of Charney's sneaker fit into the incident boardwalk hole, such that the hole could cause her or any person with small feet to trip. (Expert Rep. of Ronald Cohen at 10 and photograph enclosure 8, Mar. 31, 2007.) The area of the boardwalk where Charney fell consists of both wood decking and a "concrete deck" or path. (Charney Dep. at 30:6-21.) Charney was walking southbound on the wood decking portion of the boardwalk, immediately adjacent to and west of a section of concrete decking, when she fell. (See Charney Dep. at 27:11-18, 30:6-21; Expert Rep. of Ronald Cohen at 1, Mar. 31, 2007.) Cohen examined the incident area on October 4, 2006, approximately five weeks after Charney fell. (Expert Rep. of Ronald Cohen at 2, Mar. 31, 2007.) Photographs and examination of the area in question by Cohen detail a small hole in one of the boardwalk planks where it abutted the concrete deck.[4] The hole, in the approximate shape of a "right triangle," measured one and one-quarter inch along the edge of the concrete deck, and extended out three and three-eighths inches, at its largest point. The hole was about one and one-half inch deep to the top of the decking support. (Pl.'s Supplemental Stmt. of Material Facts at ¶¶ 43-44; Expert Rep. of Ronald Cohen at 2-3, Mar. 31, 2007.)

---

[3]Mr. Cohen is licensed as a Professional Engineer in the Commonwealth of Pennsylvania, and is employed by Consulting Engineers & Scientists, Inc., in Malvern, Pennsylvania.

[4]The record also contains two photographs of Charney taken by her daughter just after she fell. (Charney Dep. at 36:1-23; Expert Rep. of Ronald Cohen at 2 and photograph enclosures 9-10, Mar. 31, 2007.) The photographs show Charney sitting on the boardwalk in an upright position, with one pant leg pulled up past her knee. Next to Charney's left hand appears to be the same hole as that photographed and analyzed by Cohen. Cohen used the photographs taken by Charney's daughter to locate the incident hole for his analysis. (Expert Rep. of Ronald Cohen at 2, Mar. 31, 2007.)

Cohen analyzed the "nailing patterns" of the boards where Charney fell and concluded that generally two "pneumatically"/nail-gun driven nails were used to secure the end of each board to the deck below. (Follow Up Expert Rep. of Ronald Cohen at 4-5, Nov. 4, 2009.) The board in question, however, contained a third, manually-driven nail in the center of the board, between the two pneumatically-driven nails. Cohen contends that when the board in question was originally installed, the southern-most pneumatically-driven nail was driven too close to the edge of the board and at an improper angle, "causing a split to develop or enlarge." (Expert Rep. of Ronald Cohen at 5-6, Mar. 31, 2007.) He further contends that a maintenance worker likely observed the defective board at some later date, installed the center nail as a substitute for the improperly driven pneumatic nail that was no longer an effective fastener, "but allowed the hole to remain."[5] (Expert Rep. of Ronald Cohen at 6, Mar. 31, 2007.) He also contends that the boards on either side of the incident board had been replaced prior to the accident. (Expert Rep. of Ronald Cohen at 3, Mar. 31, 2007.)

Defendant's maintenance supervisor, Joseph Bartolomeo, conceded at his deposition that one of boards adjacent to the board with the hole had been replaced. (Bartolomeo Dep. at 38:21-25.) Bartolomeo also explained at his deposition that holes the size of the incident hole are not repaired because he does not consider them a trip

---

[5]Defendant's maintenance supervisor, Joseph Bartolomeo, agrees that it is possible to discern pneumatically-driven nails from manually-driven nails, and that the center nail is a manually-driven nail, but otherwise disagrees with Cohen's theory. (See Bartolomeo Dep. at 28:6-22.) Mr. Bartolomeo believes that: (1) three pneumatically-driven nails, not two, were originally used to fasten the end of the board; (2) the center pneumatic nail "backed out" over time due to wear and tear on the boardwalk; and (3) the original pneumatic center nail was replaced by a manually-driven nail. (See Bartolomeo Dep. at 31:5-25.) In other words, Bartolomeo contends that the manually-driven center nail was installed because the original center nail backed out, not because the board was split.

hazard, or otherwise dangerous. (Bartolomeo Dep. at 14:10-25, 15:1-9, 25:1-20 (indicating that holes like the one that tripped Charney are not dangerous, and are therefore not repaired.)) Finally, Wildwood claims that the boardwalk is inspected daily, and that any dangerous conditions are immediately repaired.[6] (Def.'s Br. in Supp. of Summ. J. at 8-9.)

Charney, a citizen of Pennsylvania, brought this action against the City of Wildwood, a New Jersey municipal corporation, in federal district court under 28 U.S.C. § 1332(a)(1). She filed her initial Complaint with this Court on August 22, 2008. Charney contends that the City of Wildwood breached its duty to her and other pedestrians by allowing the hole in the boardwalk to persist despite having actual and constructive notice of the dangerous condition and sufficient time to take remedial measures. (Am. Compl. at ¶ 10.) Wildwood filed an Answer on September 30, 2008, claiming there was no breach of duty, among other defenses. Subsequently, Plaintiff filed an Amended Complaint and Wildwood filed an Answer to the Amended Complaint. Wildwood filed the instant Motion for Summary Judgment on February 1, 2010, seeking dismissal of plaintiff's claims.

## II. STANDARD OF REVIEW

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party

---

[6]Wildwood states: "The City of Wildwood acknowledges that in August of 2006, it inspected the Wildwood Boardwalk on a daily basis. Each morning, an initial inspection was completed when the trash crew went out and emptied the trash cans and looked for any defects. If anything was found to be defective, the proper public entity was notified so that repairs could be effectuated. In addition, the Construction Department had a crew assigned to the boardwalk each day from 7:00 am until 2:00 pm. The crew would ride up and down the boardwalk looking for any problems. They were equipped to effectuate any repairs of the boards immediately." (Def.'s Br. in Supp. of Summ. J. at 8-9.)

is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting

6

Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)).  Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  Credibility determinations are the province of the factfinder.  Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### III. DISCUSSION

Charney contends that she was injured as a result of a dangerous condition on public property.  Under the New Jersey Tort Claims Act ("Tort Claims Act"), N.J. Stat. Ann. §§ 59:1-1 to 12-3, in order to establish public entity liability due to a property defect, a plaintiff must demonstrate:

> (1) that the property was in a dangerous condition at the time of the injury,
>
> (2) that the injury was proximately caused by the dangerous condition,
>
> (3) that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred,
>
> (4) that either:
>
>> (a) a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition, or
>>
>> (b) a public entity had actual or constructive notice of the dangerous

> condition under section 59:4-3 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition, and
>
> (5) the action the entity took to protect against the condition or the failure to take such action was palpably unreasonable.

See N.J. Stat. Ann. § 59:4-2. The requirements of the Tort Claims Act are "stringent," and place a "heavy burden" on plaintiffs seeking to establish public entity liability. Bligen v. Jersey City Hous. Auth., 131 N.J. 124, 619 A.2d 575, 581 (1993). "Generally, immunity for public entities is the rule and liability is the exception." Fluehr v. City of Cape May, 159 N.J. 532, 732 A.2d 1035, 1039-40 (1999).

Wildwood's summary judgment motion seeks dismissal of Charney's Complaint on the following three grounds: (1) the defect in the boardwalk was not a dangerous condition; (2) Wildwood had no actual or constructive notice of a dangerous condition; and (3) the action or inaction of Wildwood related to the condition was not palpably unreasonable.

As a preliminary matter, it is apparent that there is a genuine issue of material fact related to whether Wildwood had notice of the boardwalk hole. Wildwood claims to make thorough inspections of the boardwalk on a daily basis. Unless the hole that tripped Charney coincidently formed some short time before the incident, it is plausible that Wildwood observed the hole during one of its daily inspections. Furthermore, Charney presents evidence that boards on either side of the incident board were replaced, and that the center nail was installed to re-secure the incident board after the improperly driven pneumatic nail splintered the end of the board.[7] This evidence of

---

[7] A plaintiff under the Tort Claims Act has the option of proving the defendant either had notice of the dangerous condition, or that the defendant negligently created the dangerous condition. See N.J. Stat. Ann. § 59:4-2. Charney alleges that Wildwood both had notice of the dangerous condition, and was

8

repairs near the incident location is not conclusive, because it is possible that the boards were replaced and the center nail was installed *before* the hole actually formed. Nevertheless, it is reasonable to accept, as Plaintiff contends, that the center nail was installed to re-secure the end of the board after a maintenance worker observed the small hole. While not conclusive, this evidence of repairs near the incident hole further increases the likelihood that Wildwood observed the defect.

A more thorough discussion of notice is unnecessary, however, because even if Plaintiff can establish that Wildwood had notice of the boardwalk hole, the hole does not constitute a dangerous condition, and Wildwood's failure to repair the hole was not palpably unreasonable.

### A. Dangerous Condition

A plaintiff seeking to establish public entity liability under the Tort Claims Act must first demonstrate that the property defect complained of was a "dangerous condition at the time of the injury." N.J. Stat. Ann. § 59:4-2. "Dangerous condition" is defined by the Tort Claims Act as "a condition of property that creates a *substantial risk of injury* when such property is used with *due care* in a manner in which it is reasonably foreseeable that it will be used." N.J. Stat. Ann. § 59:4-1(a) (emphasis added). In order to pose a "substantial risk of injury," a condition of property "cannot be minor, trivial, or insignificant. However, the defect cannot be viewed in a vacuum. Instead, it must be considered together with the anticipated use of the property . . . ." Atalese v. Long Beach

---

negligent in creating it. (Pl.'s Am. Compl. at ¶¶ 10-12.) Therefore, even if Wildwood could establish that it did not have notice of the dangerous condition–as it argues in its motion for summary judgment–Charney could still satisfy this particular element of the Tort Claims Act by proving negligence.

Twp., 365 N.J. Super. 1, 837 A.2d 1115, 1118 (App. Div. 2003). "Due care" has been described by the New Jersey Supreme Court as implying a use of property that is not objectively unreasonable. Garrison v. Township of Middletown, 154 N.J. 282, 712 A.2d 1101, 1106 (1998).

> The Garrison court summarized the standard as follows:
>
> [I]f a plaintiff can establish that a condition of the property creates a substantial risk to any foreseeable user of the property who uses it with due care, that plaintiff has established the existence of a dangerous condition irrespective of the nature of plaintiff's use of the property or the plaintiff's lack of due care.

Id. at 1113. The relevant inquiry, therefore, in a dangerous condition analysis, is whether, regardless of the injured party's actual conduct, a property defect existed that created a substantial risk of injury to foreseeable property users utilizing due care.

The dangerous condition question is generally one of fact to be decided by a jury. Vincitore v. N.J. Sports & Exposition Auth., 169 N.J. 119, 777 A.2d 9, 11-12 (2001). However, like any question of fact, this determination is subject to a preliminary assessment by the court as to whether it can reasonably be made by a jury considering the evidence. Id. In certain cases, the dangerous condition question "must be resolved by the court as a matter of law, in order to ensure that the 'legislatively-decreed restrictive approach to liability' is enforced." Cordy v. Sherwin Williams Co., 975 F. Supp. 639, 643 (D.N.J. 1997) (quoting Polyard v. Terry, 160 N.J. Super. 497, 390 A.2d 653, 658 (App. Div. 1978), aff'd 79 N.J. 547, 401 A.2d 532 (1979)). This Court, therefore, must determine whether the evidence here is such that a reasonable fact-finder could indeed determine that the boardwalk defect was a dangerous condition.

Many courts have determined the dangerous condition question at summary

judgment.  In Polyard v. Terry, a three-eighths inch differential in road height–where a road connected with a bridge – allegedly caused a driver to lose control of his vehicle, causing a fatal accident.  390 A.2d at 655-56.  The Appellate Division found that "there was insufficient evidence to warrant the submission of the issue [to a jury] of whether the highway was in a dangerous condition," reasoning that "[t]ravelers on highways must expect some declivities and some areas of imperfect surfaces."  Id. at 659-60.  The Appellate Division, therefore, found that the plaintiff had failed to establish that the road defect could reasonably be considered a dangerous condition, and reversed a jury finding in favor of the plaintiff.  Id. at 661.  Similarly, in McCarthy v. Verona, the Appellate Division found that a one and one-half inch horizontal gap and a one and one-quarter inch vertical height difference between concrete sidewalk slabs "could not rationally be found to have created a substantial risk of injury.  Such minor irregularities are commonplace on sidewalks."  No. A-2210-99T2, 2001 WL 1917169, at *2 (N.J. Super. Ct. App. Div. Apr. 16, 2001).  The McCarthy court, therefore, affirmed a grant of summary judgment in favor of the defendant public entity because the defendant had not established the existence of a dangerous condition.  Id. at *2-*3.

In the case of Atalese v. Long Beach Twp., however, the Appellate Division found that a three-quarter inch "depression" spanning one block of a pedestrian-bicycle lane could reasonably be considered a dangerous condition for pedestrians.  837 A.2d at 1117. The trial judge in that case, relying on unspecified case law, granted summary judgment in favor of the defendant public entity, stating, "as the case law has noted, bumps and dips are common in the roadway and travelers should expect them."  Id.  The Appellate Division reversed, however, noting that Polyard was distinguishable from the case

before it. Id. at 1118. The Appellate Division explained that "Polyard was concerned with significant risk to vehicular traffic, not pedestrians," and that:

> Here, by contrast, the differential in pavement was on an area of the roadway designated for pedestrians and bicyclists. As such, the reasonably foreseeable users include walkers, runners, and all types of bicyclists. Given these anticipated uses, we conclude that a three-quarter inch difference in the level of the pavement occupying a significant portion of a bike lane and spanning an entire block could be accepted by a jury as creating a substantial risk of injury and hence a dangerous condition under the Tort Claims Act. Accordingly, we are constrained to reverse and remand for further proceedings.

Id. Therefore, while the dangerous condition question was resolved in favor of the defendant public entities in Polyard and McCarthy, the Atalese court reversed the trial court's grant of summary judgment in favor Long Beach Township. Id. at 1118.

Similar to Atalese, in Sample v. Trenton, the Appellate Division upheld a jury award based on a finding that raised, cracked, and otherwise uneven walkway bricks constituted a dangerous condition for pedestrians. 2006 WL 1975429 (N.J. Super. Ct. App. Div. July 17, 2006). Unfortunately, the walkway was paved over before exact measurements of the gaps and declivities could be taken. Id. at *1. In Ryan v. Princeton Borough, the Appellate Division found that a hole in a crosswalk, two to three feet wide and three inches deep could reasonably constitute a dangerous condition. No. A-0409-03T2, 2005 WL 1875263, at *2 (N.J. Super. Ct. App. Div. July 11, 2005). Finally, in DeBonis v. Orange Quarry, the Appellate Division found that gravel and quarry stone on a roadway, possibly spanning half a mile, could constitute a dangerous condition for a motorcycle operator. 233 N.J. Super 156, 558 A.2d 474, 477, 480 (App. Div. 1989).

12

Federal courts applying New Jersey law have also analyzed the dangerous condition question. In Cordy v. Sherwin Williams Co., a New Jersey district court considered the claim of a bicyclist who was injured when his front tire impacted a raised railroad track at a street-crossing. 975 F. Supp. at 641. The district court there found that "no reasonable juror could conclude that the existence of the railroad track crossing the county road on an essentially level plane within 7/8 of an inch of the elevation of the road surface, presents a dangerous condition," and cited Polyard for the notion that "not every defect in a highway, even if caused by negligent maintenance, is actionable." Id. at 643-44 (internal quotations omitted). That district court, therefore, granted summary judgment in favor of the defendant public entity in that case because the plaintiff had failed to establish that the raised railroad track was a dangerous condition. Id. at 649.

In Mendelsohn v. Ocean City, a New Jersey district court considered the claim of a woman who tripped over a nail that rose approximately one-quarter inch above the Ocean City, New Jersey, boardwalk. No. 02-5390, 2004 WL 2314819, at *1-*2 (D.N.J. 2004). That district court considered the relevant case law, and concluded that:

> Even with all reasonable inferences drawn in their favor, Plaintiffs have not presented sufficient evidence to raise a material issue of fact as to whether a dangerous condition existed at the time of Mrs. Mendelsohn's injury. . . . Assuming that Mrs. Mendelsohn did indeed trip on a nail, that fact does not, by itself, establish that the protruding nail was a dangerous condition. Plaintiffs' expert, Ronald E. Cohen,[8] concluded that 'certain popped nails caused a foreseeable pedestrian fall hazard' . . . However, the definition of dangerousness under the Act anticipates more than a foreseeable likelihood—a plaintiff must demonstrate a substantial risk of injury.

Id. at *4.

---

[8] It is unclear whether the Mendelsohn plaintiff's expert, Ronald E. Cohen, is the same expert that was proffered by the Plaintiff in this case, Ronald J. Cohen.

The Mendelsohn court further noted that, "those cases in which courts have found that a dangerous condition existed involve larger and more significant roadway defects." See id. at *5. Specifically, the Mendelsohn court referenced the three-quarter inch deep and one block long depression in Atalese, 837 A.2d at 1117, and a two and one-half inches height difference between two sections of walkway in an unpublished Appellate Division case, Gumpel v. Bd. of Educ. Twp. of Nutley, No. A-0348-02T3 (N.J. Super. Ct. App. Div. Oct. 21, 2003), as representing the kind of "more significant" defects that may represent a dangerous condition. Mendelsohn, 2004 WL 2314819, at *4.

Turning to the instant case, Charney supports her argument that the boardwalk hole was a dangerous condition by comparing it to the three-quarter inch depression in Atalese, and the gravel-strewn roadway in DeBonis. (Pl.'s Br. in Opp'n to Summ. J. at 16-18.) However, unlike the small boardwalk hole in Charney's case, the depression in Atalese spanned an entire block, and the roadway hazard in DeBonis consisted of a large number of stones over a half mile.

While it is difficult to precisely define what, exactly, may constitute a dangerous condition, the cases that consider small holes, voids, or height deviations in walkways or roadway surfaces generally hold that such defects are not dangerous conditions as defined by the Tort Claims Act. (See, e.g., Polyard, 390 A.2d at 655-56 (three-eighths inch differential in road height not a dangerous condition for vehicular travel); McCarthy, 2001 WL 1917169, at *2 (one and one-half inch horizontal gap and one and one-quarter inch vertical height difference between concrete sidewalk slabs not a dangerous condition for pedestrians); Cordy, 975 F. Supp. at 641. (railroad track raised

seven-eighths of an inch above roadway surface not a dangerous condition for bicycle riders); Mendelsohn, 2004 WL 2314819, at *4 (nail raised one-quarter inch above boardwalk surface not a dangerous condition for pedestrians); Gohel v. Sherry, No. A-1610-97T1, 1998 WL 34024178 (N.J. Super. Ct. App. Div. 1998) (two sidewalk cracks–one to two inches wide, one-half inch deep, and five to six inches long–not a dangerous condition for pedestrians); see also, Ciricillo v. United States, 2005 WL 2406096, at *3 (D.N.J. Sept. 29, 2005) ("[T]he relevant case law includes many examples of minor surface defects that do not constitute dangerous conditions.)).

The one and one-half inch deep, one and one-quarter inch wide triangular hole here is more similar to the sidewalk, boardwalk, and roadway defects in McCarthy, Mendelsohn, and Cordy, than the more significant hazards in Atalese or DeBonis. In addition, while it is true that the Polyard case involved a vehicular roadway, and not a pedestrian walkway, the underlying reasoning of that case–that not every defect is actionable, and that some areas of imperfection must be expected–applies to pedestrian walkway surfaces as well. In other words, other courts have held that pedestrians must expect some areas of imperfection on walkway surfaces, and not every defect in a walkway surface is actionable. The hole in the instant case, measuring one and one-half inch deep, and one and one-quarter inch wide *at its largest point*, is the kind of minor defect that does not qualify as a dangerous condition under the Tort Claims Act.

This Court finds that a reasonable fact-finder could not resolve the dangerous condition question in favor of Charney.

**B. Palpably Unreasonable Action or Inaction**

The last clause of N.J. Stat. Ann. § 59:4-2 presents plaintiffs with a final, significant hurdle. It states: "Nothing in this section shall be construed to impose liability upon a public entity for a dangerous condition of its public property if the action the entity took to protect against the condition or the failure to take such action was not palpably unreasonable."

Palpable unreasonableness is not defined by the Tort Claims Act, but has been defined by the courts. According to the Appellate Division, the question is whether the public entity acted or failed to act in such a manner that "no prudent person would approve." Furey v. County of Ocean, 273 N.J. Super. 300, 641 A.2d 1091, 1098 (App. Div. 1994). The New Jersey Supreme Court described palpable unreasonableness as a "more obvious and manifest breach of duty" than ordinary negligence, and a standard that "implies behavior that is patently unacceptable under any given circumstance." Kolitch v. Lindedahl, 100 N.J. 485, 497 A.2d 183, 187 (1985). Finally, the Third Circuit has found that "[i]n order to be palpably unreasonable under New Jersey law, actions must be the result of 'capricious, arbitrary, whimsical or outrageous decisions of public servants.'" Waldorf v. Shuta, 896 F.2d 723, 738 (3d Cir. 1990) (quoting Williams v. Phillipsburg, 171 N.J. Super. 278, 408 A.2d 827, 831 (App. Div. 1979)).

The question of palpable unreasonableness is generally decided by the fact-finder as it constitutes a question of fact. Vincitore, 777 A.2d at 11-12; Brown v. Brown, 86 N.J. 565, 432 A.2d 493, 500-01 (1981); Furey, 641 A.2d. at 1098. Nevertheless, like any question of fact, the determination of palpable unreasonableness is subject to a preliminary assessment by the court as to whether it can reasonably be made by a fact-finder considering the evidence. Black v. Boro. of Atlantic Highlands, 263 N.J. Super.

16

445, 623 A.2d 257, 261 (App. Div. 1993). Therefore, in appropriate cases, "the question of palpable unreasonableness may be decided by the court as a matter of law." Maslo v. City of Jersey City, 346 N.J. Super. 346, 787 A.2d 963, 965 (App. Div. 2002) (citing Garrison, 712 A.2d at 1116). Indeed, some courts have found as a matter of law "that it is not palpably unreasonable for a [public entity] to have not repaired small irregularities in walkway surfaces." Mendelsohn, 2004 WL 2314819, *7 (citing Maslo, 787 A.2d 963; McCarthy, 2001 WL 1917169; and Gohel, 1998 WL 34024178).

In McCarthy v. Verona, the Appellate Division upheld summary judgment in favor of the defendant public entity where a municipality did not repair a one and one-quarter inch raised sidewalk that caused a pedestrian to trip. 2001 WL 1917169, at *1. Without significant elaboration, the court found that the "minor irregularity" in the incident sidewalk was not a dangerous condition and that the township's failure to repair it was not palpably unreasonable. Id. at *2. In another Appellate Division case upholding summary judgement in favor of the defendant public entity, the court in Gohel found that two sidewalk cracks—one to two inches wide, one-half inch deep, and five to six inches long—did not constitute a dangerous condition and that the defendant's failure to remedy the imperfections did not amount to palpable unreasonableness. 1998 WL 34024178, at *2.

Finally, in Mendelsohn, the district court concluded that a rational fact-finder could not determine that Ocean City's actions or inactions in regard to the one-quarter inch raised nail were palpably unreasonable. 2004 WL 2314819, at *6. The plaintiff in that case argued that defendant Ocean City "was palpably unreasonable in its failure to switch from nails to screws in holding the Boardwalk together, adopt a written

17

maintenance policy for the Boardwalk, or replace the Boardwalk despite acknowledging its dilapidated condition . . . ." Id. In reaching its decision the district court noted that Ocean City conducted safety inspections of the boardwalk four to six times per month, and that the section of the boardwalk where the plaintiff fell was scheduled to be replaced. Id. at *7. The Mendelsohn court concluded that while Ocean City could have conducted maintenance and repairs of the boardwalk in a more effective way, any negligence on the part of Ocean City simply did not rise to the level of palpable unreasonableness. Id.

     Charney argues that Wildwood was palpably unreasonable, because, despite having notice of the incident hole, Wildwood failed to recognize it as a dangerous condition and therefore left the hole unrepaired. (Pl.'s Br. in Opp'n to Summ. J. at 30.) Even assuming, however, that Wildwood had notice of the hole, it cannot be said that the decision to leave a one and one-half inch deep, one and one-quarter inch wide triangular hole unrepaired was palpably unreasonable. At worst, the decision to leave small boardwalk defects unrepaired was negligent. Indeed, Wildwood, like Ocean City in the Mendelsohn case, arguably could have made more thorough and effective repairs of the boardwalk. Perfection, however, is not required under the Tort Claims Act. Wildwood made daily inspections of the boardwalk and repaired those defects it deemed sufficiently hazardous. As in McCarthy and Gohel, Wildwood's failure to remedy a small defect in a walkway surface cannot be said to constitute the kind of "outrageous" or "patently unacceptable" behavior that rises to the level of palpable unreasonableness. Imperfections in boardwalk surfaces are commonplace, and the failure of a public entity to remedy every small defect in a boardwalk simply cannot be deemed palpably

unreasonable.  Accordingly, a reasonable fact-finder could not resolve the palpable unreasonableness question in favor of Charney.

## IV. CONCLUSION

For the reasons expressed above, Defendant's motion for summary judgment [Dkt. Entry No. 29] is granted. The Court will issue an appropriate order.


Dated: August 18, 2010 /s/ Joseph H. Rodriguez
HON. JOSEPH H. RODRIGUEZ,
United States District Judge